JOURNAL ENTRY and OPINION.
{¶ 1} Thomas Hughes appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of robbery in connection with an incident where he injured a J.C. Penney security officer during a struggle after he allegedly stole 11 items of children's clothes from the store. On appeal, he assigns the following errors for our review:
 {¶ 2} "I. Appellant Tommy Hughes' conviction for robbery was based on insufficient evidence and against the manifest weight of the evidence."
 {¶ 3} "II. Use of the appellant's prior conviction was unfairly prejudicial and/or questioning regarding those convictions was unlawfully broad."
 {¶ 4} "III. A six year sentence was excessive and contrary to law."
 {¶ 5} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 6} The record reflects a grand jury indicted Hughes for one count of aggravated robbery stemming from an incident where he injured Scott Tassinari, a J.C. Penney employee, when he attempted to leave the store after allegedly stealing 11 items of children's clothes. Subsequently, the state amended its indictment and charged Hughes instead with one count of robbery.
 {¶ 7} At the jury trial, Tassinari gave an account of the events; he stated Hughes initially aroused his suspicion because Hughes stared at him when he first saw Hughes at the infants' department. He then observed Hughes take items of clothing off the hangers from that department and then again from the boys' department. Therefore, Hughes proceeded to the girls' department, where no one manned the cash register at the time, and took several store bags from behind the counter. Hughes placed the clothes in the bags and headed toward the doors. At this time Tassinari asked Horace Mitchell, another store personnel, to accompany him outside to stop Hughes.
 {¶ 8} As Hughes exited the store, Tassinari stated to Hughes: "Excuse me. J.C. Penney's security. I need you to come back in the store." Hughes started to run and Tassinari grabbed his left arm. When Hughes attempted to turn, the bags in his hands swung and struck Tassinari on the right side, causing Tassinari to lose his grip on Hughes. Tassinari grabbed Hughes again, and they both fell to the ground. When both of them got up, Hughes struck Tassinari on the left side of his head with a closed fist. Tassinari grabbed onto Hughes' shirt, ripping it off his back. He then grabbed onto the back of Hughes' jeans and pulled him to the ground. While both of them were on the ground, Hughes hit Tassinari twice in the chest and once in the right side of his head, knocking Tassinari's glasses off. Several store employees then came to Tassinari's aid, helping to hold Hughes down until Officer Marc Davis arrived, who then arrested Hughes. Tassinari testified he sustained scrapes on his knees and elbows, as well as a cut above his right eye and swelling on the right side of his face. He later went to the hospital for an X-ray of his left wrist. He also had his eye examined for possible injuries.
 {¶ 9} Three other J.C. Penney employees testified for the state. Mitchell stated he saw Hughes swing at Tassinari with the bags; he gathered the merchandise and the bags scattered on the ground and went inside the store to call the police; when he returned outside, Tassinari and Hughes were "tussling" on the ground.
 {¶ 10} Vicky Finney, also a store employee, testified she was on a smoke break when she observed Tassinari chase after a man and grab his shirt from his back. She heard Tassinari yelling: "I am security" and saw Hughes strike Tassinari in the face with a closed fist.
 {¶ 11} Another store employee, Terri Reid, also on a smoke break at the time of the incident, testified that she saw Tassinari attempt to pull Hughes and saw Hughes strike Tassinari in the face with a closed fist at least three times. She testified she tried to help Tassinari restrain Hughes by holding Hughes' arms down.
 {¶ 12} William Girrard, a former auxiliary police officer for the City of Richmond Heights, testified he was waiting for his tires to be replaced at the nearby Firestone store when he heard a scream from J.C. Penney's parking lot. When he got there, he saw Hughes, on top of Tassinari, throwing punches. He testified that he helped hold Hughes down until the police arrived. Finally, Officer Davis testified when he arrived, he saw several people holding Hughes down. He saw blood on Tassinari's face and his clothes torn.
 {¶ 13} Hughes testified and denied stealing any items from the store, claiming he went to J.C. Penney that day to exchange several items of previously purchased children's clothes. He stated a sales-person in the girls' department helped him with the exchanges and he purchased for cash three additional caps. He admitted he may have scratched Tassinari in self defense as Tassinari tried to grab him and claimed Tassinari never identified himself. He also testified the items of children's clothing shown in the state's photographic exhibits were not the items he had brought into the store.
 {¶ 14} Following trial, the jury found Hughes guilty of robbery, and the court sentenced him to a six-year prison term.[1] Hughes now appeals.
 {¶ 15} In his first assigned error, Hughes challenges the sufficiency of the state's evidence for his robbery conviction and also maintains his conviction is against the manifest weight of the evidence. We review his sufficiency claim first.
 {¶ 16} In State v. Jenks,[2] the court set forth the following standard for our review of a sufficiency challenge:
 {¶ 17} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 18} The offense of robbery is defined in R.C. 2911.02 as:
 {¶ 19} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 20} "* * *.
 {¶ 21} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another.
 {¶ 22} "(3) Use or threaten the immediate use of force against another."
 {¶ 23} The element of force or harm differentiates robbery from theft.[3] Where a defendant struggles with a security guard while resisting apprehension after a shoplifting incident, this court has consistently applied the "single continuous transaction" rule and held that such conduct, as part of a single continuous act committed by the defendant, constitutes sufficient evidence to establish the force or harm element of robbery in this context.[4] Accordingly, this court has always rejected these defendants' sufficiency claims.[5]
 {¶ 24} Similarly, here, the state presented evidence that Hughes, in resisting a store employee's attempt to apprehend him after the employee observed him leave the store without paying for several items, struggled with the employee, struck him, and injured him. In accordance with the case law, therefore, we reject Hughes' contention that the state's evidence is insufficient for his conviction of robbery.
 {¶ 25} We next consider Hughes' manifest-weight challenge. In evaluating this claim, our duty is to review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[6]
Furthermore, we are mindful that the discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs heavily against the conviction.[7]
 {¶ 26} We further recognize that the weight of the evidence and the credibility of witnesses are primarily issues for the jury,[8]
because the jury is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms in determining each witness's credibility.[9]
 {¶ 27} Here, the record contains conflicting testimony from the state's witnesses and Hughes. Tassinari testified he saw Hughes take items from the store without paying, while Hughes denied stealing any items, claiming instead that he had gone to the store to make exchanges; Hughes also denied the items shown on the state's photographic exhibits were those he had in the bags.
 {¶ 28} Given this conflicting evidence, and given the deference we must afford the trier of fact in assessing the credibility of witnesses, we cannot say that the jury, in resolving conflicts in the evidence in this case, clearly lost its way and created such a manifest miscarriage of justice that Hughes' conviction must be reversed and a new trial ordered.
 {¶ 29} Accordingly, we overrule Hughes' first assigned error.
 {¶ 30} In his second assigned error, Hughes contends that the prosecutor's questioning of him regarding his prior convictions were excessive and prejudicial, claiming that the court erred in admitting this evidence in violation Evid.R. 403.
 {¶ 31} We note as an initial matter that in reviewing a trial court's evidentiary determinations, we apply an abuse of discretion standard.[10]
 {¶ 32} When an accused testifies at trial, Evid.R. 609 allows the state to impeach his credibility with evidence of prior felony convictions. Evid.R. 609(A)(2) states:
 {¶ 33} "(2) Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice of confusion of the issues, or of misleading the jury."
 {¶ 34} Furthermore, Evid.R. 609(A)(3) allows evidence regarding a witness's conviction of any crime if the crime involves dishonesty. It states, in relevant part:
 {¶ 35} "(3) Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment * * *."
 {¶ 36} Here, the record reflects that the prosecutor questioned Hughes about his felony convictions in the last 10 years and also examined him regarding a recent misdemeanor theft conviction. Under Evid.R. 609(A)(2), evidence of Hughes' felony convictions within a 10-year period is permitted to impeach his credibility. As to his misdemeanor theft conviction, we note that theft offenses are crimes of dishonesty within the meaning of Evid.R. 609(A)(3) and may also be used for impeachment.[11]
 {¶ 37} Hughes contends, however, that the prosecutor's extensive examination of his long record of prior convictions, although permissible for impeachment, is nonetheless prejudicial.
 {¶ 38} We note that Hughes' credibility is central to the jury's evaluation of the evidence in this case: he gave an account of the incident entirely different from that given by the state's witnesses. Therefore, the trial court acted within its discretion when it allowed the state to impeach him by questioning him extensively on his prior convictions as authorized by Evid.R. 609. This assignment of error is without merit.
 {¶ 39} In his third assigned error, Hughes asks us to reduce his sentence pursuant to the authority of R.C. 2953.08(G). He argues that his six-year term is excessive because it "stands in stark contrast" to the one-year sentence in a proposed plea bargain which he had rejected and because no serious injury resulted from his offense.
 {¶ 40} In accordance with R.C. 2953.08(G),[12] an appellate court may modify or vacate a sentence imposed under Senate Bill 2 only if it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law.[13] Clear and convincing evidence is that evidence "which will produce * * * a firm belief or conviction as to the facts sought to be established."[14]
 {¶ 41} Furthermore, we recognize that the sentence imposed upon an offender should be consistent with the overriding purposes of felony sentencing, that is, to protect the public from future crime by the offender and to punish the offender.[15]
 {¶ 42} Here, the record reflects that the court made the following remarks in connection with its imposition of a six-year term for Hughes' conviction of robbery:
 {¶ 43} "* * *[Y]ou showed absolutely no remorse. You have a record that is just something else. I never seen [sic] anything like it in my life.
 {¶ 44} "We don't even discuss your out-of-state convictions, of which there are many, but here in Cuyahoga County, Judge Nancy Fuerst, possession of drugs. Judge Nancy Fuerst, another case of possession of drugs. Judge William Mahon, * * * [p]ossession of drugs.
 {¶ 45} "Judge John J. Curran, unauthorized use of property. Judge Curran. On another case you pled guilty to drug law, [and] forgery. A number of forgery counts. Theft.
 {¶ 46} "Another case with Judge Curran you pled guilty [to] forgery, uttering and theft charges. Another case with Judge John Curran you pled guilty of some more forgery, uttering and theft counts.
 {¶ 47} "* * * My goodness. Three more separate case files with Judge John Curran [in which] you pled guilty to forgery, uttering and theft.
 {¶ 48} "Then you were sentenced to prison in each of the situations that I just discussed with [regard to] Judge John Curran and Judge Nancy Fuerst, and yet, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 cases with Judge Thomas Matia, and in all of those you pled guilty to a variety of theft, forgery and uttering cases, and then you are sentenced to prison on all those matters.
 {¶ 49} "* * *.
 {¶ 50} "You continue to commit crimes. I feel that it would demean the seriousness of the offense and wouldn't adequately protect the public to give you anything less than six years." (Tr. 369-370.)
 {¶ 51} The record thus indicates that the court imposed a six-year sentence because of Hughes' extraordinarily lengthy history of prior offenses and convictions. Given this record, we conclude that the trial court's sentence is supported by clear and convincing evidence and furthermore is not contrary to law. We therefore defer to its exercise of discretion and decline to modify Hughes's sentence. Accordingly, we overrule this assignment of error.
Judgment affirmed.
MICHAEL J. CORRIGAN, P.J., and DIANE KARPINSKI, J., CONCUR.
[1] Hughes was separately charged with violations of drug laws in a separate case. He pled guilty to all five counts in that case and the court sentenced him to five concurrent 10 month sentences, to be served concurrently with the six-year term for his robbery conviction.
[2] (1991), 61 Ohio St.3d 259, paragraph two of syllabus, citingJackson v. Virginia (1979), 443 U.S. 307.
[3] See Committee Comment to R.C. 2911.02 (the difference between theft and robbery is an element of actual or potential harm to persons); see, also, State v. Sumlin (June 15, 2000), Cuyahoga App. No. 76261.
[4] See State v. Dunning (March 23, 2000), Cuyahoga App. No. 75869;Sumlin, supra.
[5] See, e.g., State v. Dowdell (May 3, 2001), Cuyahoga App. No. 77863 (defendant pushed a store employee and swung him into a concrete pillar during a struggle); State v. Shelton (Nov. 5, 1998), Cuyahoga App. No. 72060 (defendant shoved and pushed while trying to run away); State v.Evans (Jan. 4, 1996), Cuyahoga App. No. 68675 (defendant pushed a security guard and swung at him); State v. Zoya (December 16, 1993), Cuyahoga App. No. 64322 (defendant attempted to flee by thrashing and swinging his arms and striking a store employee's chest); State v.Calhoun (November 14, 1991), Cuyahoga App. No. 59370 (defendant pushed a store security manager in attempting to flee); State v. Smith (August 15, 1991), Cuyahoga App. No. 58986, (defendant resisted arrest by lashing out to strike the officer); State v. Pittman (Jan. 19, 1989), Cuyahoga App. No. 54949 (defendant resisted apprehension by pushing and thrashing his legs); State v. Anderson (January 31, 1985), Cuyahoga App. No. 48563 (defendant shoved store security officers twice during an attempt to flee).
[6] State v. Martin (1983), 20 Ohio App.3d 172,175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42. See, also, State v. Thomkins
(1997), 78 Ohio St.3d 380.
[7] See Martin; Thomkins.
[8] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[9] See State v. Dowd, Cuyahoga App. No. 80990, 2002-Ohio-7061, citingState v. Saunders (Nov. 21, 2000), Franklin App. No. 99 AP-1486.
[10] See State v. Lowe, (1994), 69 Ohio St.3d 527, 532.
[11] See Dunning, supra, citing State v. Mayes (Dec.30, 1999), Madison App. No. CA-99-01-002.
[12] This statute provides, in pertinent part:
"(2) The court hearing an appeal * * * shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
"The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
"(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
"(b) That the sentence is otherwise contrary to law."
[13] See, e.g., State v. Sherman (May 20, 1999), Cuyahoga App. No. 74297.
[14] State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247, quoting Cross v. Ledford (1954), 161 Ohio St. 469.
[15] R.C. 2929.11(A).